IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:13-CV-00030-BR

| | |
|---|---|
| PNC BANK, NATIONAL ASSOCIATION, )<br>successor to RBC Bank (USA), )<br>formerly known as RBC Centura Bank, )<br>  )<br>Plaintiff, )<br>  )<br>v. )<br>  )<br>ELIOT TOD GASKILL, )<br>  )<br>Defendant. )<br>_____ ) | ORDER |

This matter is before the court on plaintiff's motion to dismiss defendant's counterclaim pursuant to Fed. R. Civ. P. 12(b)(6). (DE # 21.)

Plaintiff, a Delaware national bank with its principal place of business in Pennsylvania, initiated this action on 6 May 2013 to collect past-due loan obligations in excess of $600,000. (DE # 1.) Defendant is a resident of North Carolina. (Id. ¶ 2.) Defendant executed three promissory notes (collectively, the "Notes") in favor of RBC Centura Bank,[1] with principal amounts totaling $687,500. (Id. ¶¶ 6, 8, 10.) The parties modified two of the Notes twice and modified one note three times. (Id. ¶¶ 6-11.) The most recent modifications extended the maturity dates of the Notes to 10 July 2012. (Id. ¶¶ 7(c), 9(b), 11(b).) Prior to 10 July 2012, defendant requested a further modification of the Notes, which plaintiff subsequently declined. (Ans., DE # 15, ¶¶ 51-54.) Defendant failed to repay the Notes in full by 10 July 2012, (Compl., DE # 1, ¶¶ 15, 17, 19), and plaintiff initiated this collection proceeding. Defendant filed his

---

[1] Subsequent to the creation of the Notes, RBC Centura Bank changed its name to RBC Bank (USA), which later merged with and into PNC Bank, National Association, the plaintiff in this action. (Compl., DE # 1, ¶¶ 12-13.)

answer and counterclaim on 26 September 2013.  (DE # 15.)  Plaintiff thereafter filed the instant motion to dismiss.  (DE # 21.)  Defendant filed a response in opposition, (DE # 24), to which plaintiff replied, (DE # 26).

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a pleading must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  "While a [pleading] attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a p[arty]'s obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations, internal quotation marks, and original alteration omitted).  In other words, the pleading must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).  It must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  In considering whether defendant has established a plausible counterclaim for relief, this court is bound to accept well-pleaded facts of his pleading as true; however, conclusory assertions of law or fact are not entitled to the assumption of truth. See id. at 678-79; Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009).

Although his allegations are entitled "Counterclaim," defendant appears to assert three counterclaims.  First, he alleges that the parties agreed at the time the Notes were signed that they would use "short term balloon payments" (which they both knew defendant could not pay) to enable plaintiff to periodically adjust the applicable interest rate by way of subsequent loan

2

modifications, and that plaintiff breached this agreement by refusing to modify the Notes after 12 July 2012. (Answer, DE # 15, ¶¶ 45-49, 54, 56.) Defendant also asserts that plaintiff breached its duty of good faith and fair dealing in refusing to modify the Notes. (Id. ¶ 56.) Lastly, defendant asserts that plaintiff's actions violate North Carolina's unfair and deceptive trade practices statute, N.C. Gen. Stat. § 75-1.1. (Id. ¶ 60.)

To the extent defendant claims that plaintiff breached the parties' oral agreement to modify the Notes, such claim is barred by North Carolina's[2] statute of frauds and the parol evidence rule. North Carolina statutory law requires that a "commercial loan commitment"[3] in excess of $50,000 be in writing in order to be binding. N.C. Gen. Stat. § 22-5; see also LFM Real Estate Ventures, LLC v. SunTrust Bank, No. 5:11CV135-RLV, 2012 WL 6114242, at *6 (W.D.N.C. Dec. 7, 2012) ("In addition to the parol evidence rule, North Carolina's Statute of Frauds prevents the Court from considering [the lender's] allegedly fraudulent oral statements." (citing N.C. Gen. Stat. § 22-5)). Under the parol evidence rule, in turn, "all prior and contemporaneous negotiations . . . are deemed merged in the written agreement" and "parol testimony of prior or contemporaneous negotiations or conversations inconsistent with the writing, or which tend to substitute a new and different contract from the one evidenced by the writing, is incompetent." Neal v. Marrone, 79 S.E.2d 239, 242 (N.C. 1953) (citations omitted); see also Harrell v. First Union Nat'l Bank, 334 S.E.2d 109, 110 (N.C. Ct. App. 1985) (confirming that the parol evidence rule "prohibits the consideration of evidence as to anything

---

[2]The parties do not dispute that North Carolina law applies.

[3]A "commercial loan commitment" is defined as "an offer, agreement, commitment, or contract to extend credit primarily for business or commercial purposes and does not include charge or credit card accounts, personal lines of credit, overdrafts, or any other consumer account." N.C. Gen. Stat. § 22-5. Defendant acknowledges that the Notes were commercial loans. (Ans., DE # 15, ¶¶ 42-43.)

3

which happened prior to or simultaneously with the making of a contract which would vary the terms of the agreement"), aff'd per curiam, 340 S.E.2d 111 (N.C. 1986). Each of the modifications to the Notes contains a provision stating that "[c]onsent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms." (DE ## 1-5 to 1-7, 1-9 to 1-10, 1-12 to 1-13.) Because the parties' alleged oral agreement at the time of the signing of the documents is inconsistent with the provisions of the writings themselves, the alleged oral agreement is invalid.

Defendant's claim that plaintiff violated its duty of good faith and fair dealing, which appears to also be premised on the alleged breached oral agreement, likewise fails. Implied in every agreement is "a basic principle of contract law that a party who enters into an enforceable contract is required to act in good faith and to make reasonable efforts to perform his obligations under the agreement." Maglione v. Aegis Family Health Ctrs., 607 S.E.2d 286, 291 (N.C. Ct. App. 2005) (citation and internal quotation marks omitted). However, as discussed previously, plaintiff has no obligation to continue modifying the Notes, and thus, a failure to do so is not a breach of its duty of good faith and fair dealing. See Gaujacq v. EDF, Inc., 601 F.3d 565, 580 (D.C. Cir. 2010) (holding that the defendant did not breach its duty of good faith and fair dealing because plaintiff's "contract came to its natural and agreed-upon conclusion in July 2004, and [the defendant] never agreed to extend the old contract or execute a new one" (citations and internal quotation marks omitted)); Claggett v. Wake Forest Univ., 486 S.E.2d 443, 447-48 (N.C. Ct. App. 1997) (rejecting claim for breach of duty of good faith where a university, having followed its procedures for considering tenure, denied plaintiff's application).

Because defendant's contract claims fail, his claim of unfair or deceptive trade practices

4

under N.C. Gen. Stat. § 75-1.1 must also be dismissed. Section 75-1.1 claims "are often based either on an underlying breach-of-contract claim or a claim of affirmative fraud or misrepresentation." LFM Real Estate, 2012 WL 6114242, at *9. According to defendant, his § 75.1 claim is "founded on and arise[s] from the claims for breach of the covenant of good faith." (Am. Resp., DE # 25, at 3.) However, as discussed above, such breach-of-contract claim fails and, as such, so does the derivative § 75.1 claim. See LFM Real Estate, 2012 WL 6114242, at *10 ("If Plaintiffs' [unfair or deceptive trade practices] claim is based upon their underlying breach-of contract claim, the claim will necessarily fail as it is derivative of Plaintiffs' breach-of-contract claim."); The Mark Andrew of The Palm Beaches, Ltd. v. GMAC Commercial Mortg. Corp., 265 F. Supp. 2d 366, 382 (S.D.N.Y. 2003) ("Because the Statute of Frauds prohibits the plaintiffs from enforcing this alleged oral contract, the plaintiffs are also prohibited from recovering on tort claims . . . that seek damages based on the same conduct and representations that are merely derivative of their claim for breach of an oral contract."), aff'd, 96 F. App'x 750 (2d Cir. 2004).

Plaintiff's motion to dismiss is GRANTED, and defendant's counterclaims are DISMISSED WITH PREJUDICE.

This 16 April 2014.

_____
W. Earl Britt
Senior U.S. District Judge

5

Case 2:13-cv-00030-BR   Document 27   Filed 04/16/14   Page 5 of 5